ALBERT F. DEVUONO, Plaintiff, *v.* FRANK J. MULLER and Another, Defendants.

Municipal Court of the City of New York, Borough of Manhattan, First District, March 10, 1926.

Motor vehicles — action to recover damages arising from collision between plaintiff's automobile and defendant's motor truck — truck was being driven by owner thereof in employ of corporation on per diem basis — deduction by corporation of one dollar from per diem price paid for truck hire to cover insurance cost indicative of control by corporation over truck and driver — owner and corporation jointly liable.

In an action to recover damages arising from a collision between plaintiff's automobile and a motor truck driven by the owner, both the owner and the corporation which employed the owner and his truck on a per diem basis are liable for the negligent operation of the truck in the business of the corporation, since it appears that the plaintiff was free from any act contributing to the accident, and that the corporation deducted from the per diem wage one dollar a day for the payment of insurance, for said payment warrants a finding that the corporation exercised some control over the truck or deemed itself in control of the truck and driver.

ACTION for damages resulting from collision between plaintiff's automobile and defendants' motor truck.

*Joseph L. Banzenhofer,* for the plaintiff.

*John P. Smith,* for the defendants.

PANKEN, J. This case presents two problems: *First,* whether or not the truck which collided with the plaintiff's car was operated in a careless and negligent manner. The case also presents the question as to whether or not the plaintiff by his own action contributed to the occurrence of the accident. The *second* problem is whether or not the defendant Candee, Smith & Howland Co., Inc., assuming that the truck was operated in a negligent and careless manner by the driver, the codefendant Frank J. Muller, is at all liable for any damages sustained by the plaintiff as the result of this accident.

The first problem is one which presents a clear question of fact. The testimony in this case shows that the plaintiff was proceeding along Seventh avenue in a northerly direction; that when he got to the corner of Forty-fourth street, he turned east. The truck driven by the defendant Muller was moving in a southerly direction along Broadway. At Forty-fourth street and Broadway there is only a small space dividing it from Seventh avenue. The physical facts testified to indicate that the plaintiff is free from any act contributing to the occurrence of the accident; and I conclude, as a matter of fact, that the truck colliding with the plaintiff's car

was operated in a careless and negligent manner. The testimony of the defendant Muller discloses that the collision occurred on the south-bound Broadway trolley car track, on the southerly side of Forty-fourth street, which together with the plaintiff's testimony in the case clearly indicates that the defendant's car had traversed a much greater distance than did the plaintiff's car, and, therefore, that it was driven at a fast rate of speed, while the plaintiff's car proceeded at a moderate rate.

The second problem presents a rather difficult question for determination. There are many cases relating to the question, but I have been unable to find more than one case directly in point. The following rule of law has been laid down in *Howard* v. *Ludwig* (171 N. Y. 507): That the relationship of master and servant would be created whether or not the vehicle was owned by the defendant or the driver was *ab initio* employed by the defendant, providing that the vehicle and the driver were used in the course of business conducted by the defendant, and the driver was subject to the orders of the defendant; that under such a state of facts the negligence of the driver would be the negligence of his immediate principal; that is, the principal would be the one who exercised direction over the driver.

In the case of *Stapleton* v. *Butensky* (188 App. Div. 237) one of the defendants was the Knickerbocker Electrotype Company. Liability was said to be fixed upon it by reason of the negligence of one McGuire. In the body of the opinion, written by Mr. Justice LAUGHLIN (at p. 239) the following language appears: " McGuire at first hired, but at the time of the accident owned, the delivery wagon and it had painted on it the name of the appellant company; and from the time of his original employment by the appellant company until long after the accident he continued in its employ on the terms stated, furnishing the horse, wagon and his own services, with the exception of the last eight months of his employment, during which he used another horse. It does not appear that his contract with the company required him to furnish any particular horse or wagon, but merely a horse and wagon."

Then (at p. 243) Mr. Justice LAUGHLIN says: " The liability of the appellant company, however, if it be liable, must be predicated upon another ground. I am of the opinion that its liability depends upon whether it is chargeable with the notice and knowledge its servant McGuire had of the vicious propensity of the horse. It is perfectly clear on the evidence that the relationship of master and servant existed between McGuire and the company and that in driving the horse in making deliveries and in returning therefrom and in leaving the horse in the street unattended

McGuire was acting as the servant of the company and that it would be answerable to anyone sustaining injuries or damages by reason of McGuire's negligence," and by the way cites as authority the case of *Howard* v. *Ludwig (supra)* and others; and further on says: " There can be no doubt, I think, but that the wagon and the horse as well as McGuire were in the employ of the company and were being used in the performance of its business and that if anyone lawfully upon or near the wagon sustained injuries through its being negligently unsafe or out of repair the company would be liable."

In this case the truck was owned by the codefendant Muller, and he, Muller, operated the truck.  There is no dispute between the parties that Muller and his truck were employed by the defendant Candee, Smith & Howland Co., Inc., on a *per diem* basis.

On the day in question the testimony disclosed that Muller was on his way to the plant conducted by his codefendant for the purpose of picking up a load of material.  In view of the fact that he had obtained a slip the day before to load his truck at the place of business of his codefendant on the morning in question, it must be concluded, as a matter of fact, that at the time the accident occurred he was in the employ of his codefendant.  The question is, does the fact that the defendant Muller was the owner of the truck and the driver of the truck, place his codefendant Candee, Smith & Howland Co., Inc., in a different relationship from what it would be if he were a driver for somebody else and the truck together with him were hired out to the defendant Candee, Smith & Howland Co., Inc., herein.  I do not think that that changes the relationship in as far as this plaintiff is concerned (*Stapleton* v. *Butensky, supra*), if the defendant Candee, Smith & Howland Co., Inc., exercised some control over the codefendant and the truck operated by him.  Did the said defendant exercise some control over Muller and his truck?  The testimony in the case discloses that one dollar per day was deducted from the agreed *per diem* price for the use of the truck and the services of Muller by Candee, Smith & Howland Co., Inc.; that that dollar per day was used in payment for insurance.  There has been no testimony as to what insurance was obtained.  It is, however, clear from the testimony of Muller that the deduction was made for insurance of the truck. That testimony has not been successfully controverted.  The deduction of one dollar from the *per diem* price by the defendant Candee, Smith & Howland Co., Inc., for insurance coverage, indicates clearly its relationship to this codefendant.  I conclude that it exercised some control over the truck, or deemed itself in control of the truck and driver.

Surrogate's Court, New York County, February, 1926.      [Vol. 126

Often the only possible way to determine the relationship between parties is from their general course of conduct. The course of conduct in this case indicates an exercise of control of Muller and his truck by his codefendant.

In so far as the defendant Muller is concerned, he is liable to the plaintiff for any damages sustained by him. Concluding as I do that the other defendant exercised control over the truck and the driver in charge of the truck, it follows that it also is liable. Judgment will, therefore, be found in favor of the plaintiff as against both defendants.